UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE LINDA CURTIS,

    Plaintiff                                        Civil Action No. 16-11062

v.                                                 HON. DAVID M. LAWSON
                                                    U.S. District Judge
                                                    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Katherine Linda Curtis ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

## PROCEDURAL HISTORY

On December 13, 2013, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 2, 2011 (Tr. 175, 179, 181). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on April 7, 2015 in Toledo, Ohio

before Administrative Law Judge ("ALJ") Jonathan Eliot (Tr. 40).  Plaintiff, represented by Shiman Belon testified (Tr. 48-73), as did Vocational Expert ("VE") Joseph Thompson (Tr. 73-79).  On May 11, 2015, ALJ Eliot found Plaintiff not disabled (Tr. 24-34).  On February 4, 2016, the Appeals Council denied review (Tr. 1-6).  Plaintiff filed for judicial review of the final decision in this Court on March 23, 2016.

## BACKGROUND FACTS

Plaintiff, born January 2, 1970, was 45 when ALJ Eliot issued his decision (Tr. 34, 175).  She left school after 10th grade and worked previously as a bartender, bar manager, and sandwich artist (Tr. 218).   She alleges disability resulting from back and neck injuries and radiating lower extremity symptoms (Tr. 217).

### A. Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by amending the onset date to May 28, 2013* (Tr. 44).

 Plaintiff then offered the following testimony:

She lived in Monroe, Michigan, stood 5' 1" and weighed 207 pounds (Tr. 49).  She was divorced and currently lived in a single-family home with her fifteen-year-old daughter, four-year-old granddaughter, and sister (Tr. 49-50).  They were supported by the sister's disability payments (Tr. 50).

Plaintiff drove "when needed," but had been driven to the hearing by her disabled sister (Tr. 51).  Plaintiff helped care for her granddaughter (Tr. 51).  She completed 11th grade and was able to write and do simple math (Tr. 51).  She had acquired vocational training required to work in a bar (Tr. 51).  She received unemployment benefits until the middle of 2013, and looked for work while receiving unemployment benefits (Tr. 52-53).

Between 2006 and 2011, Plaintiff worked at a bar, during which time she held the positions of manager, bartender, cleaner, and cook, although her primary job was bartending (Tr. 54). She would typically spend around two hours of her nine-hour shift cleaning (Tr. 54). Her managerial responsibilities entailed ordering food and utensils through a food service supplier; hiring and firing; payroll; and scheduling (Tr. 55). From 2004 to 2006, she was a sandwich artist at a Subway (Tr. 55). Prior to that position, she worked at a bar for four years (Tr. 56).

Plaintiff experienced radiating back pain that prevented her from standing or sitting for more than five minutes (Tr. 57). The pain radiated to her upper back and down to her feet, and numbness of the right toes caused balance problems (Tr. 57). She also experienced migraines once a week (Tr. 58). The migraines were caused by "tension and stress" and required her to recline with a pillow over her head (Tr. 58). She took Ibuprofen for the migraines (Tr. 58).

Since the onset of disability, Plaintiff had undergone fusion surgery to correct the back problems (Tr. 59). Her pain was "100 percent" worse since the surgery (Tr. 59). Post-surgical physical therapy made the condition even worse (Tr. 59). Her "therapy" (prescribed by a new physician) was now limited to rolling a pencil with her foot and trying to pick it up with her toes (Tr. 60). She currently received pain management treatment and was taking Percocet and a muscle relaxant (Tr. 61).

Plaintiff also experienced depression (Tr. 62-63). She avoided interacting with others since finding out that she required back surgery (Tr. 63). She "shut out" her family and did not enjoy going shopping (Tr. 63). At her worst times, occurring around three times a month, she did not want to come out of her room (Tr. 64). Since the surgery, she had gained a significant amount of weight (Tr. 64).

Recently, her symptoms of depression had lessened (Tr. 64). She had recently received a prescription for Lyrica (Tr. 65). She received good results from Lexapro (Tr. 64). She reported daytime fatigue resulting from nighttime sleep disturbances brought on by back pain (Tr. 65-66). She had been referred to a psychologist but had cancelled the appointment because she did not believe that she needed mental health treatment (Tr. 66).

On a typical day, Plaintiff arose in the late morning or early afternoon; had coffee; helped her granddaughter get dressed; and then walked around the house (Tr. 66-67). She only showered once every three days and did not perform any housework besides picking up her coffee cup and wiping the kitchen table (Tr. 67). She did not perform any yard work and grocery shopped only once or twice every two weeks (Tr. 68). She spend most of her waking hours yelling at her sister's noisy dogs (Tr. 69). She occasionally gave the dogs water, but was not otherwise involved in their care (Tr. 69). She did not attend social events, but had friends over or went out for coffee (Tr. 69).

In response to questioning by her attorney, Plaintiff testified that she experienced level "7" (on a scale of 1 to 10) pain constantly (Tr. 69). The radiating lower extremity pain was worse on the right (Tr. 70). She experienced leg and shoulder numbness (Tr. 70). Sitting and standing too long caused back pain (Tr. 70). Her best position was lying on her side with a pillow between her legs (Tr. 70). The pain required her to recline twice a day for up to 45 minutes at a time (Tr. 70).

Plaintiff lacked the concentration to sit through a 30-minute television show or read a book, due to pain from sitting for extended periods (Tr. 71). She was unable to stand for more than five minutes, walk for more than five houses, or lift more than a gallon of milk (Tr. 72). Pain from the migraines was typically an "8" or "9" (Tr. 72). Her meal preparation was limited to TV dinners or other easy meals (Tr. 73).

    **B.    Medical Evidence**

        **1.    Records Related to Plaintiff's Treatment**

    May, 2013 treating records by Aamer Bhurgri, M.D. note Plaintiff's report of headaches, chest pain, and ankle pain (Tr. 281, 477). The same month, Plaintiff sought emergency treatment for headaches (Tr. 363, 498). She reported nausea and light sensitivity (Tr. 349). The following month, she reported continued headaches and right back pain radiating into the lower extremities (Tr. 280). June, 2013 imaging studies show spondylolysis at L5-S1 (Tr. 442). She was diagnosed with migraine headaches (Tr. 460). Records from July, 2013 note right ankle swelling (Tr. 279). Records from the following month note early osteoarthritis of the right ankle (Tr. 278).

    In September, 2013, Plaintiff sought emergency treatment for a hand injury (Tr. 345). She exhibited a normal range of motion and affect (Tr. 345-346). October, 2013 imaging studies of the cervical spine were unremarkable (Tr. 452). A November, 2013 MRI of the lumbar spine showed neuroforaminal narrowing at L5-S1 due to spondylolysis (Tr. 290-291, 454-455, 517-518). Plaintiff reported right foot numbness and back pain since taking a fall one year earlier but noted that she currently earned money babysitting (Tr. 286, 519). She reported depression (Tr. 286, 519). She exhibited full muscle strength, a normal gait, and a normal affect (Tr. 286-287, 541-543). Mustafa A. Hares, M.D. found that Plaintiff would be a good candidate for fusion surgery (Tr. 514). The following month, Frederick S. Junn, M.D. noted that Plaintiff was cleared Plaintiff for the surgery (Tr. 288, 514). Dr. Bhurgi's March, 2014 treating records note diagnoses of hypertension, headaches, depression, and anxiety (Tr. 311-312). Plaintiff exhibited a normal gait and station (Tr. 312). She appeared fully oriented (Tr. 308).

    In April, 2014, Plaintiff underwent spinal fusion surgery (Tr. 295-298, 512). She was

discharged five days later in stable condition (Tr. 299). Records from the following month note a normal gait (Tr. 333). A June, 2014 CT of the head, performed in response to Plaintiff's report of ongoing migraines, was normal (Tr. 443). An July, 2014 MRI, ordered in response to Plaintiff's report of the lower extremity numbness, was unremarkable (Tr. 444-446). Dr. Junn noted a normal physical examination and a normal affect despite Plaintiff's report of ongoing pain (Tr. 551-552). He prescribed Oxycodone and physical therapy (Tr. 552). Dr. Bhurgi's September, 2014 exam records note a normal gait and station (Tr. 304). Physical therapy records from the same month state that Plaintiff was discharged after experiencing worsening back pain and lower extremity radiculopathy (Tr. 317).

In October, 2014, Samer El Fallal, D.O. recommended psychiatric treatment due to Plaintiff's overuse of prescription pain medicine and report of depression (Tr. 549). Plaintiff denied chronic back pain (Tr. 548). An examination was negative for joint swelling and muscle spasms (Tr. 548). Notes from a November, 2014 neurological examination note Plaintiff's report of ongoing back pain with radiculopathy (Tr. 502). She denied thoughts of depression, but the same records state that she experienced depressive symptoms (Tr. 502). She exhibited a normal gait but a limited range of motion and tenderness with occasional spasms (Tr. 502). She was prescribed Percocet (Tr. 502).

Dr. El Fallal's February, 2015 records note that Plaintiff denied depression (Tr. 545-546). She exhibited a normal range of motion and normal gait (Tr. 546). Dr. El FAllal referred Plaintiff to a pain management specialist in response to her reports of ongoing pain and the need to elevate her legs (Tr. 545-546). March, 2015 records by Betty K. Rumschlag, D.O. note Plaintiff's report of ongoing mild to moderate right foot pain, neck pain, left knee pain, and depression (Tr. 505). Dr. Rumschlag noted that Plaintiff currently took Lexapro, Lyrica, and Percocet (Tr. 505). Plaintiff denied current headaches and exhibited a normal

range of motion and gait (Tr. 505, 557-558). Plaintiff displayed appropriate judgment (Tr. 557). Imaging studies of the neck, right foot, and left knee were unremarkable (Tr. 506).

### 2. Non-Treating Records

In February, 2014, psychologist Sheila C. Williams-White, Ph.D. performed a non-examining review of the treating records on behalf of the SSA (Tr. 92-93). She found the absence of any work-related mental impairment (Tr. 93). The same month, Milagros Flores, M.D. also performed a non-examining review of the treating records, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull on an unlimited basis (Tr. 94). He found that Plaintiff was limited to occasional stair/ramp climbing, balancing, stooping kneeling, crouching, and crawling (Tr. Tr. 94-95). He precluded all climbing of ropes, ladders, or scaffolds (Tr. 94).

### 3. Evidence Submitted After the May 11, 2015 Administrative Decision

On December 22, 2015, Dr. Daniel Mekasha assessed Plaintiff's functional abilities (Tr. 6-10). He diagnosed her with "failed back syndrome," opining that her condition would not improve (Tr. 6). He found that she experienced "stabbing, shooting [and] numbing" lower back pain with lower extremity radiculopathy (Tr. 6). He found that Plaintiff's pain would interfere "constantly" with her work duties (Tr. 7). He found that she was disabled from May 28, 2013 forward (Tr. 7). He found that she was unable to sit or stand for more than 15 minutes, walk for more than half a block, or lift more than 10 pounds (Tr. 8). He found that Plaintiff's symptoms would cause her to miss six or more days of work each month (Tr. 9).

### C.    Vocational Expert Testimony

VE Thompson classified Plaintiff's past work as a manager as skilled and exertionally

light, and the jobs of bartender and cook, semiskilled/light[1] (Tr. 75). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, educational level, and past work:

> Please consider an individual who can perform light work. This individual can frequently climb ramps and stairs, frequently stoop, kneel, crouch, crawl and balance on uneven surfaces. They can never climb ladders and scaffolds. Additionally, the individual can work in an environment with frequent vibration, but no unprotected heights or moving mechanical parts. Finally, they are limited to perform simple, routine tasks. Can the hypothetical individual perform any of [the former work] as actually performed or as performed in the national economy? (Tr. 75-76).

The VE testified that while the limitations would foreclose the past work and transferrable positions, the individual could perform the exertionally light, unskilled work of a folder (2,000 jobs in the state economy); cleaner (5,000); and packer (3,000) (Tr. 76). The VE found further that if the same individual were limited to "occasional climbing of ramps and stairs" and occasional stooping, kneeling crouching crawling, and balancing on uneven surfaces, the job findings would remain unchanged (Tr. 76-77). The VE testified that if the same individual were limited to sedentary work, she could perform the work of an order clerk (2,000); bench worker (900); and assembler (800) (Tr. 77). He found that the need to elevate the legs more than six to nine inches, or, reclining during the workday would preclude all competitive employment (Tr. 78). He also testified that the need to elevate the legs 24 inches and lie down hourly would preclude all work (Tr. 78).

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") except for the findings regarding elevation of the lower extremities or the need to lie down (Tr. 78). In response to questioning by Plaintiff's attorney, he stated that the need to be off task for 15 percent of the workday (excluding scheduled breaks) would preclude all work (Tr. 78-79).

### D. The ALJ's Decision

Citing the medical records, ALJ Eliot determined that Plaintiff experienced the severe impairments of "bilateral spondylosis of L5; grade 1 or 2 anterior spondylolisthesis of L5 to S1; moderate to severe bilateral neuroforaminal narrowing; status-post spinal fusion surgery; depression; migraines; and obesity in combination with the other impairments," but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1"(Tr. 26-27). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 28). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform exertionally light work with the following additional restrictions:

> [O]ccasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, crawl, and balance on uneven surfaces; can never climb ladders or scaffolds; can work in an environment with occasional vibration, but no unprotected heights or moving mechanical parts; and is limited to performing simple routine tasks (Tr. 30).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the light, unskilled work of a folder, cleaner, and packer (Tr. 33).

The ALJ discounted the allegations of disability. He adopted Dr. Flores February, 2014 finding that Plaintiff was capable of a range of exertionally light work (Tr. 94-95). He noted that Plaintiff's ability to care for her young granddaughter undermined the claims of

disabling physical limitations (Tr. 32). The ALJ also noted that Plaintiff was able to make money babysitting as of November, 2013 (Tr. 32). The ALJ observed that Plaintiff was able to sit through the hearing without apparent discomfort, contrary to her claim that she could not sit for more than five minutes without requiring a position change (Tr. 32). He noted that Plaintiff took only Motrin or Tylenol for the migraine headaches (Tr. 32).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Rule

Plaintiff argues first that the ALJ erred by adopting Dr. Flores' February, 2014 non-examining conclusion that she was capable of exertionally light work instead of the opinion of a treating source made subsequent to the April, 2014 fusion surgery. *Plaintiff's Brief,* 5-8, *Docket #15,* Pg ID 608. Plaintiff argues, in effect, that the earlier non-examining findings are invalidated by post-surgical records showing disabling symptoms. *Id.* In support of this argument, Plaintiff cites Dr. Mekasha's December, 2015 finding that she was unable to perform even sedentary work. *Id.* at 7-8.

It is well established that "[i]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given

controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). Moreover, Plaintiff is correct that in some instances, favoring older findings without consideration of more current ones may constitute reversible error. *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)

However, Plaintiff's "treating opinion" argument should be rejected for multiple reasons.

First and most obviously, the transcript reviewed by the ALJ does not contain a treating opinion of limitation or disability, or, an assessment of the work-related abilities by a treating source. *See* 20 C.F.R. § 404.1527(a)(2)("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the impairment(s), including . . . symptoms, diagnosis and prognosis" and what one "can still do despite impairment(s), and [the]physical or mental restrictions"). The treating records, including the treating observations, notation of Plaintiff's self-assessments, and clinical findings, by themselves, do not constitute "treating opinions."

Second, while Plaintiff seems to argue that Dr. Mekasha's December, 2015 assessment, submitted over six months after the ALJ's decision, is entitled to controlling weight, the newer evidence does not provide grounds for remand.[2] The sixth sentence of 42 U.S.C. § 405(g), pertaining to evidence submitted after the administrative decision, states that the court "may at any time order additional evidence to be taken before the Commissioner

---

[2] I cannot determine whether Dr. Mekasha is actually a treating source. Even assuming that he established a treating relationship at the time of the December, 2015 assessment, his opinion cannot be considered for the reasons stated above.

of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff can show neither "good cause" nor the materiality of the newer records. Plaintiff has offered no explanation for the failure to submit the assessment prior to the ALJ's decision. While it is unclear whether counsel deliberately submitted the newer records to "sandbag" the ALJ's non-disability finding, post-decision evidence created for the purpose of "rebutting" an ALJ's decision does not satisfy the "good cause" requirement of § 405(g). *Haney v. Astrue*, 2009 WL 700057, *6 (W.D. Ky. March 13, 2009)(*citing Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); *See also Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008)(citing *Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374-75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)). Further, the assessment post-dates the administrative decision by several months. Plaintiff's condition subsequent to the date of the ALJ's decision is intrinsically irrelevant. *Sizemore*, 865 F.2d at 712. While Dr. Mekasha states that his assessment applies to Plaintiff's condition from the alleged onset of disability date, the statement is unsupported by treating records from the relevant period. If Plaintiff believes that her condition has worsened since the May 2015 administrative determination, her remedy is to make a new application for benefits. *Id.*

Further, the ALJ did not err in adopting Dr. Flores' assessment over the treating

records post-dating the April, 2014 surgery. Plaintiff's reliance on *Blakley, supra,* 581 F.3d at 409, for the argument that the older records are automatically invalidated by newer ones is unavailing. In *Kepke v. Commissioner of Social Sec.*, 636 Fed.Appx. 625, 632 (6th Cir. January 12, 2016), the Court noted that *Blakley* had been misconstrued as "a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source" had not reviewed the more recent records. *Id.* To the contrary, the *Kepke* Court found that under *Blakley,* the ALJ was required only to "give 'some indication'" that the latter records were "'at least considered'" prior to adopting the earlier findings. *Id.* (*citing Blakley at* 409).

In this case, the ALJ provided a thorough review of the records post-dating Dr. Flores' findings (Tr. 31-32). The treating records created subsequent to Dr Flores' assessment are not inconsistent with his findings. Treating records from July, 2014 note a normal physical examination (Tr. 551-552). In September and November, 2014, treating sources observed a normal gait and station (Tr. 304, 502). In October, 2014, Plaintiff denied chronic back pain (Tr. 548). February and March, 2015 records also show a normal range of motion and gait (Tr. 505, 546, 557-558). None of the post-surgical imaging studies supported Plaintiff's allegations of disabling symptoms.

As such, the ALJ did not err in adopting Dr. Flores' February, 2013 non-examining assessment on the basis that it was "consistent with the medical records as a whole" (Tr. 32).

### B. The Credibility Determination

Plaintiff also disputes the ALJ's finding that her allegations were not credible. *Plaintiff's Brief* at 8-10. She argues, in effect, that the ALJ's rationale for the credibility determination was not well supported by the record. *Id.*

The credibility determination, currently guided by SSR 96-7p, describes a two-step

process for evaluating symptoms.[3] "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment ... that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.*

Plaintiff's claim that the reasons for discounting her claims were substantively inadequate is unavailing. The ALJ noted that Plaintiff assisted in taking care of her four-year-old grandchild, reasonably inferring that the childcare responsibilities stood at odds with the claims of disability (Tr. 32). While Plaintiff downplayed the child care activity, the ALJ cited November, 2013 records stating that she earned money babysitting (Tr. 32). The ALJ did not err in finding that the part-time work undermined Plaintiff's allegations that she lacked the physical and psychological stamina to work (Tr. 32). The ALJ pointed out that her claim that she was unable to sit for more than five minutes stood at odds with her ability to sit through the lengthy administrative hearing without apparent discomfort (Tr. 32). Because the findings are well supported and explained, the deference regularly accorded an

---

[3] In March, 2016, SSR 16-3p superceded SSR 96-7p. The newer Ruling eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016). The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." See 20 C.F.R. § 404.1529(c)(3), fn 7, below. Nonetheless, SSR 96-7p applies to the present determination, decided on May 11, 2015. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006)(accord 42 U.S.C. § 405(a))(The Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations").

ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).

In closing, while my recommendation should not be interpreted as trivializing Plaintiff's difficulties, the ALJ's determination was well within the "zone of choice" accorded the administrative fact-finder and as such, should be remain undisturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

                              s/R. Steven Whalen
                              R. STEVEN WHALEN
                              United States Magistrate Judge

Dated: February 21, 2017


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 21, 2017, electronically and/or by U.S. mail.

                              s/Carolyn M. Ciesla
                              Case Manager